
RECEIVED
BY MAIL
AUG 05 2016
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

# UNTIED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert Lee Stabnow

**Plaintiff,**

vs.

Emily Johnson Piper; Shelby Richardson; Nancy Johnston; Jannine Hébert; Kevin Moser; Terry Kneisel; Steve Sajdak; Scott Benoit; Ralph Schmidt; Ken Stewart; Julianna L Beavens; Ronald Fischer; Sara L. Kulas; Dana Osborne; Jenna Younker; Mark A. Hansen; Will A. Robinson; Mathew R. Brown; Thomas L. Cherro; Nicole L. Kielty; Jesse J. Cornish; Thane D. Murphy; Rebecca L. Benson; Meg M. Mccauley; Kris Huso; Minnesota Sex Offender Program, and the Minnesota Department of Human Services

**Defendants.**

Court File No.:_____

16cv2648 DWF/LIB

**CIVIL COMPLAINT PURSUANT TO TITLE 42 U.S.C. § 1983 & 1985**

## I    INTRODUCTION

1.  This is a Civil Rights Action filed by Robert Lee Stabnow, who is civilly committed involuntarily to the care and custody of the Minnesota Sex Offender Program ("MSOP"), administered by the Department of Human Services (DHS).

2.  Mr. Stabnow is involuntarily committed to the MSOP after being diagnosed with a "mental illness" as defined in Minnesota Statute § 253B and section 245.462, subdivision 20. and/or a "mental disorder" as defined under Minnesota Statute § 253D.

S C A N N E D
AUG 0 5 2016
U.S. DISTRICT COURT ST. PAUL

3.  Mr. Stabnow alleges that Defendants violated his constitutional, statutory and common law rights to: (1) equal protection of the law; (2) to be free from inhumane treatment in violation of those rights; and (3) to be free from an invasion of privacy by not reporting the unlawful use of Mr. Stabnow's identity to the proper authorities, which subsequently resulted in the unlawful use of the stolen identity a second time.

## II    PROCEDURAL BACKGROUND

4.  Mr. Stabnow was a victim of *Identity Theft* pursuant to 18 USC §1028 and Minn.Stat. § 609.527.  Mr. Stabnow became aware of the theft on or around December 2, 2014. When Mr. Stabnow reported the above criminal actions to the defendants captioned above.  Each individually failed to report the crime and each refused assistance to Mr. Stabnow to report the crime to the Moose Lake Police Department ("MLPD").

5.  The MLPD informed Mr. Stabnow that they do not deal with Patients from the MSOP and that patients must deal with the Office of Special Investigations ("OSI") at the MSOP facility.  The inaction above resulted in the theft of Mr. Stabnow's identity a second time.

## III    NATURE OF THE ACTION

6.  Mr. Stabnow alleges violations of his constitutional, statutory and common law rights.  Specifically, Mr. Stabnow alleges that the Defendants, in their official capacity and where applicable, in their individual capacity, have committed the following acts:

2

7.   They denied Mr. Stabnow his right to justice after being the victim of a crime by not assisting him with reporting the crime in a timely fashion to the MLPD.

8.   Defendants support the use of a Policy (formerly "Policy number: 107.005; Titled: Office of Special Investigations" revised and renumbered as DCT Policy Number:145-1000 same Title) that inhibits the reporting of crimes stated in paragraph four. This is for the supposed safe and secure operation of the MSOP, which is supposed to provide a safe, secure, and therapeutic environment for Mr. Stabnow to reside while confined under the order of civil commitment.

9.   Defendants failed in their official & individual capacity as mandated reporters, and Providers of Healthcare Care and Institutional Services to properly report a crime to the proper authorities as outlined in Minn.§ 609.527 Subd. 5. "(a) A person who has learned or reasonably suspects that a person is a direct victim of a crime under subdivision 2 may initiate a law enforcement investigation by contacting the local law enforcement agency that has jurisdiction where the person resides, regardless of where the crime may have occurred. The agency must prepare a police report of the matter, provide the complainant with a copy of that report, and may begin an investigation of the facts, or, if the suspected crime was committed in a different jurisdiction, refer the matter to the law enforcement agency where the suspected crime was committed for an investigation of the facts;" and Minn.§ 626.557 subd.1 "The legislature declares that the public policy of this state is to protect adults who, because of physical or mental disability or *dependency on institutional services,* are particularly vulnerable to maltreatment; to assist in providing safe environments for

vulnerable adults; and to provide safe institutional or residential services, community-based services, or living environments for vulnerable adults who have been maltreated." Which as a result according to Minn. § 626.557 subd. 7 "A mandated reporter who negligently or intentionally fails to report is liable for damages caused by the failure."

10. Each defendant failed to protect Mr. Stabnow's right to have his property secure from theft in their Individual capacity. Each defendant knew or should have known right from wrong to do the right thing, which, in this case, was to report the commission of a crime perpetrated against Mr. Stabnow.

11. Each defendant failed to implement a proper remedy and/or amend relevant MSOP Policy, to deter the injury complained of herein from repeating itself in the future;

12. Each defendant conspired against Mr. Stabnow to prevent him from reporting that he was the victim of a crime; by insinuating that Mr. Stabnow is at fault for the crime being committed in the first place; telling Mr. Stabnow that "he doesn't need to have an account outside of the MSOP since he already has an account that he can use in the MSOP's client banking;" which in turn created an environment of high stress and led to Mr. Stabnow's emotional distress and eventual acting out physically in a manner that set him back in his therapy and his bid for release.

## IV    JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction for Mr. Stabnows' state law claims

pursuant to 28 U.S.C. § 1367. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## V    DECLARATORY AND INJUNCTIVE RELIEF

14.    This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy exists regarding the rights, privileges, and immunities to which Mr. Stabnow is entitled while committed to the care and custody of the State of Minnesota. Pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and other necessary and proper relief.

## VI    MONETARY RELIEF

15.    Each Defendant has personally and individually injured Mr. Stabnow. Pursuant to Minn. § 626.557 subd. 7 "A mandated reporter who negligently or intentionally fails to report is liable for damages caused by the failure." 42 USC § 1985 (2,3) "If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." "In any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for

the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." Therefore, each Defendant is available for prosecution for monetary relief.

## PARTIES

### Plaintiff:

Robert Lee Stabnow is civilly committed to the MSOP in the care and custody of the Minnesota Department of Human Services for an indefinite period of time and is housed within the established borders of Carlton County in Moose Lake, Minnesota.

### Defendants:

16. Emily Johnson Piper is the commissioner of the Department of Human Services ("DHS") 444 Lafayette Road; St. Paul, Minnesota 55155-0992 and oversees all programs that are associated with DHS and is responsible for the actions of those programs, program administrators, and their policy writers.

17. Nancy A Johnston is the former Executive Director of the MSOP, 444 Lafayette Road; St. Paul, Minnesota 55155-0992, and was responsible for overseeing all of the day to day operations of MSOP and was a key member of MSOP's administration and helped to author new Administrative Policies and Procedures that are then implemented within the MSOP.

18. Shelby Richardson, is the current Executive Director and the former Executive Clinical Director of the MSOP, 444 Lafayette Road; St. Paul, Minnesota 55155-

0992, and was formerly responsible for overseeing all of the day to day clinical operations of MSOP and is currently responsible for overseeing all of the day to day operations of MSOP. She is a key member of MSOP's administration and helps to author new Administrative Policies and Procedures that are to be implemented within the MSOP

19. Kevin Moser is the current Facility Director of the MSOP, Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for ensuring that the staff under his supervision are operating the facility in a manner that complies with the Administrative Policies and Procedures and is aware of any deficiencies within them.

20. Terry Kneisel is the current Assistant Facility Director of the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for ensuring that the staff under him are operating the facility in a manner that complies with the Administrative Policies and Procedures and is aware of any deficiencies within them.

21. Scott Benoit is a Program Manager at the Moose Lake Site, 1111 HWY 73; Moose Lake, MN 55767, that oversees the Unit Directors and is responsible for ensuring that Unit Directors under him are operating the units in a manner that complies with the Administrative Policies and Procedures and is aware of any deficiencies within them.

22. Steve Sajdak is a Program manager at the Moose Lake Site, 1111 HWY 73; Moose Lake, MN 55767, that oversees the Property/Canteen Department and is responsible for ensuring that staff under him are operating the property/canteen area in a manner that complies with the Administrative Policies and Procedures and is aware of any

deficiencies within them. He also spoke to Mr. Stabnow directly about the theft of his Identity.

23. Ralph Schmidt is the current Director of OSI, 444 Lafayette Road; St. Paul, Minnesota 55155-0992, and is responsible for the staff under him. He is aware of the deficiencies within the Administrative Policies and Procedures and refused to help in any remedy to those problems

24. Ken Stewart is the current Assistant Director of OSI, 444 Lafayette Road; St. Paul, Minnesota 55155-0992, and is responsible for the staff under him. He is aware of the deficiencies within the Administrative Policies and Procedures and refused to help in any remedy to those problems.

25. Julianna L Beavens is an Officer of the Day at the Moose Lake Site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for all of the staff in the facility and oversees their actions. She also reviews all staff reports and signs off on them; as well as signing off on any Behavioral Expectations Reports ("BERs") that are written during her watch. She is aware of the deficiencies within the Administrative Policies and Procedures and refuses to help in remedying those problems.

26. Ronald Fischer is an Officer of the Day at the Moose Lake Site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for all of the staff in the facility and oversees their actions. He also reviews their reports and signs off on them as well as signing off on any BERs that are written during his watch. He is aware of the deficiencies within the Policies and Procedures and fails to help in remedying those problems

27.  Sara L. Kulas is the Unit Director of Complex 1, Unit 1 E at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for overseeing the day to day operations of the security staff on the unit; ensuring that the patients are not being mistreated.  She failed to contact OSI when she became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside her scope of duties by failing to protect Mr. Stabnow from further injury.

28.  Dana Osborne is a Clinical Supervisor on Complex 1, Unit 1E at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for overseeing the clinicians that operate on the unit ensuing that the patients all have a Primary Therapist to work with.  She is aware of the deficiencies that exist in Administrative Policy & Procedure and she failed to contact OSI when she became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside her scope of duties by failing to protect Mr. Stabnow from further injury.

29.  Jenna Younker is a Clinician on unit 1E at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and she failed to contact OSI when she became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside her scope of duties by failing to protect Mr. Stabnow from further injury.

30.  Mark A. Hansen is a Security Counselor Lead that works on Complex 1, Unit 1E at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and he failed to contact OSI when he became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside his scope of duties by failing to protect Mr. Stabnow from further injury.

31. Will A. Robinson is a security counselor that works on unit 1E at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and he failed to contact OSI when he became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside his scope of duties by failing to protect Mr. Stabnow from further injury.

32. Mathew R. Brown is a Security Counselor that works on the A-Team at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767. He failed to contact OSI when he became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside his scope of duties by failing to protect Mr. Stabnow from further injury.

33. Thomas L. Cherro is a Security Counselor that works on the A-Team at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767. He failed to contact OSI when he became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside his scope of duties by failing to protect Mr. Stabnow from further injury.

34. Nicole L. Kielty is a Security Counselor that works on the A-Team at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767. She failed to contact OSI when she became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside his scope of duties by failing to protect Mr. Stabnow from further injury.

35. Thane D. Murphy is an investigator for OSI at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767. He failed to contact OSI when he became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside his scope of duties by failing to protect Mr. Stabnow from further injury.

36. Rebecca L. Benson is an investigator for OSI at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767. She failed to contact OSI when she became aware that Mr.

Stabnow's safety and security was in jeopardy and acted outside her scope of duties by failing to protect Mr. Stabnow from further injury.

37.     Meg M. Mccauley is the Client Rights Coordinator at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and is responsible for assisting clients with various issues including but not limited to facilitating Gratis Calls to various entities and Businesses.  She is aware of the deficiencies that exist in Policy and failed to help remedy the problem even though it jeopardized the safety and security of Mr. Stabnow.

38.     Kris. Huso is the Grievance Coordinator and Kevin Moser's Secretary at the Moose Lake site, 1111 HWY 73; Moose Lake, MN 55767, and she is responsible for responding to all requests that are sent to Kevin Moser as well as assigning grievances to the appropriate department head.  She is aware of the deficiencies that exist in Policy and fails to help remedy the problem.

## VII   ALLEGATIONS

39.     The defendants have failed to remedy a known problem, that they acknowledge, but allow Mr. Stabnow to remain at risk.  They have created road-blocks that hinder Mr. Stabnow from protecting his identity by not implementing a policy that will assist him in filing a police report in a prompt manner when necessary.

40.     Mr. Schmidt claims it would be too much work for them to add language to their policies that deal with contacting the Police Department on behalf of their patients when a patient is the victim of a crime from a member of society.

11

41.  Mr. Murphy also insisted that because Mr. Stabnow got his money refunded by the bank, that he should stop worrying about who stole his identity and let the issue drop; insinuating that he should just let the person responsible get away with breaking the law and keep victimizing him.

42.  After a month of asking for assistance, Mr. Stabnow finally took drastic measures and within a few hours had the assistance that he had been requesting.

43.  A Police Report was filed and a copy given to Mr. Stabnow for his own records.  Mr. Stabnow asserts that if the staff of the MSOP had been more helpful and taken him seriously when he first reported this criminal act against him on December 2, 2014, that further harm would have been prevented.

44.  As such, the defendants stepped outside of their professional judgment and legitimate job duties by not promptly assisting Mr. Stabnow report this crime perpetrated against him.  The defendants obstructed the legal process and prevented Mr. Stabnow from being protected by the law and allowed the crime to be repeated by referring him to MSOP's request process (Policy Number: 420-5099 Titled: Client Requests), a process that can take ten (10) calendar days or more.

## VIII  FACTS

45.  Mr. Stabnow was civilly committed on august 31, 2007 to the care of the MSOP and defendants.  Mr. Stabnow stipulated to the Commitment and did not file any appeals.

46.  Mr. Stabnow opened an outside banking account with US Bank in November 2013; opening a checking, and savings, account, which is significant to Mr. Stabnow's

treatment, because upon requesting discharge Mr. Stabnow: "shall not be discharged unless capable of making acceptable adjustment to society…" showing he is capable of making good financial decisions.   while it is difficult to maintain a nominal positive balance, it is essential for eventual release.

47.  Defendants are responsible for Mr. Stabnow, who was committed to the care of the Commissioner of the Department of Human Services (DHS) to the Minnesota Sex Offender Program a facility Operated and overseen by.  Defendant Emily Johnson Piper

48.  Defendants Shelby Richardson; Jannine Hébert; and Kevin Moser ("Admin. Defendants") are responsible for writing the Policies and Procedures that govern the facility Mr. Stabnow resides in, and each of the other named Defendants are responsible for the day to day enforcement of the policies that are written by the former identified defendants.   The Defendants have no reasonable allowance in Policy 107.005: Office of Special Investigations, for patients to reasonably report a crime perpetrated against them.

49.  Mr. Stabnow first complained of being the victim of *Identity Theft* on December 2, 2014, and there was only one Incident Report written (Dated 12/2/14).

50.  The report was written by Defendant Meg M. McCauley, even though Mr. Stabnow spoke with the following Defendants: Steve Sajdak, Nicole L. Kielty, Mark A. Hansen, and Jenna R. Younker about the possible commission of a crime.

51.  On December 2, 2014 Mr. Stabnow was directed by Ms. McCauley to submit a request to Assistant Director of OSI, Ken Stewart.

52. Mr. Stabnow received a response from Mr. Stewart on December 5, 2014 with the following response: "I will send an investigator to meet with you, please save all documents you have related to this as possible evidence, thanks Ken."

53. On December 16, 2014, Defendants Thane D. Murphy, and Rebecca Benson, spoke to Mr. Stabnow about the request from ¶ 51 and took his statement via a digital audio recorder.

54. Mr. Murphy and Ms. Benson made photocopies of Mr. Stabnow's evidence on December 16, 2014.

55. Defendants attempted to minimize their culpability to Mr. Stabnow by saying: "Because you got your money refunded by the bank, you should consider letting the issue drop; because it is at best, a misdemeanor crime."

56. Upon further investigation, Mr. Stabnow discovered that Defendants Murphy & Benson acted outside the scope of their professional duties; as outlined in MSOP Policy 410-5300 "Incident Reports" by choosing not to write Incident Reports on the conversation discussed in ¶ 53-54.

57. Further, Defendant Murphy failed to assist Mr. Stabnow's filing of a police report saying: "You can do this on your own behalf with the MLPD over the phone."

58. On December 16, 2014, Mr. Stabnow called the MLPD, via the *Global Telink Phone System*, to report being the victim of *Identity Theft*. The MLPD said: Mr. Stabnow should call to follow up in two weeks after Mr. Murphy and Ms. Benson have forwarded evidence to them.

59.  Mr. Stabnow discussed his frustration related to having his identity stolen during his

core group therapy and discussed the steps that he had taken so far to report that he

was the victim of a crime.

60.  Defendant Younker was the facilitator of that group, and asked Mr. Stabnow: "What

are your thinking errors in this situation?" implying that Mr. Stabnow is at fault for

the theft and that he is wrong for being upset about being victimized.

61.  On December 30, 2014, Mr. Stabnow again contacted the MLPD at 09:55am, via the

*Global Telink Phone System.*

62.  The MLPD was wholly unwilling to take a report of the crime that was committed.

63.  The conversation was recorded; as Defendants Cornish, Benson, and Murphy took

the time to write *Incident Report's* about the telephone call via their internal

reporting system.

64.  Mr. Stabnow was told by MLPD Officer Halverson that he needed to work with

MSOP OSI since they only accept reports that are forwarded from OSI.

65.  Mr. Stabnow went to the Unit 1E staff desk and asked Defendant Mark Hansen to:

"Please contact OSI, because after speaking to the MLPD I am supposed to go

through OSI to file a criminal complaint with the police.  Can you please assist me

with this?"

66.  Mr. Hansen refused to contact OSI and instructed Mr. Stabnow to submit a "Client

Request."

67.  Mr. Stabnow showed Mr. Hansen that he had written Client Requests and stated:

"I've written enough Client Requests.  It's time for action.  I've been the victim of a

crime and you want me to write more Client Requests?   Who are you trying to protect from being charged with *Identity Theft*?   Why won't anyone help me report this crime to the police?"

68.   Mr. Hansen quoted the OSI policy and said: "You can contact the police yourself."

69.   Mr. Stabnow told Mr. Hansen: "I just got off the phone with the MLPD and they will only take a report from OSI."

70.   Mr. Hansen again told Mr. Stabnow that if he wants to speak with OSI that he needed to write a Client Request.

71.   Mr. Stabnow stated: "That will take too long.   The longer it takes to report this to the police, the more likely it is that I will have more money stolen from my account.   I do not want this to happen again.   I need to speak to OSI today.   This is serious."

72.   About this time, Defendant Robinson came to the desk from off of the unit and listened to the conversation, and even though Mr. Stabnow was clearly distressed about having his Identity stolen, defendant Robinson logged on to the computer station at the desk and chose to do nothing to assist Mr. Stabnow.

73.   Mr. Hansen kept insisting that Mr. Stabnow write a Client Request if he wished to still speak with OSI.

74.   At the approximate time of 10:05am; it was apparent to Mr. Stabnow that each defendant would not take him seriously unless he threatened the security of the facility.

75. Mr. Stabnow then walked toward the back of the staff desk, which is an unauthorized area, saying: "If you will not take me seriously and call OSI then I will give you a reason to call them."

76. At this point Mr. Hansen initiated the Incident Command System ("ICS").

77. Mr. Stabnow then backed away from the back of the desk and stood at the front of the desk and waited for Defendants Cherro, Kielty, and Brown ( the Crisis Management Team) to arrive on the unit.

78. Mr. Thomas Cherro approached Mr. Stabnow and inquired of him what his problem was, and asked Mr. Stabnow to go sit at the table.

79. Mr. Stabnow said: "No I will not go anywhere until OSI is called to the Unit!"

80. Mr. Cherro inquired why Mr. Stabnow wanted OSI, and Mr. Stabnow explained to Mr. Cherro that he was the victim of *Identity Theft* and that the MLPD would not file a police report unless directed to by OSI to do so.

81. Mr. Cherro asked Mr. Stabnow to again go to the table to sit down.

82. Mr. Stabnow said: "No!  I will not do anything you ask until I know that OSI is going to file a police report on my behalf!"

83. Mr. Cherro then gave Mr. Stabnow a direct order to leave the staff desk, Mr. Stabnow complied.

84. Defendant Kulas, Complex Unit 1E Unit Director, arrived on the unit and spoke to defendants' Hansen, Robinson, Cherro, Brown, and Kielty about the situation.

85. Ms. Kulas approached Mr. Stabnow and told him that if he wanted to submit a Client Request, he would get the assistance that he was seeking.

86.  Mr. Stabnow responded with: "I am done waiting for the request process to work. OSI refers me to the CRC, and the CRC refers me back to OSI. Nobody is willing to just help me file a police report. I will keep this unit on lockdown for as long as is needed to file a police report. This issue will be resolved today, one way or another!"

87.  Ms. Kulas stated that she would call the CRC and see if she could help with what Mr. Stabnow was asking.

88.  Ms. McCauley arrived to the unit and stated that she spoke to Ms. Benson from OSI and that she would call the MLPD to file a police report for Mr. Stabnow and that after Ms. Benson was finished with her duties—running an errand—in Duluth Minnesota, she would stop by the MLPD and get the police report for Mr. Stabnow's record.

89.  Mr. Stabnow went to his cell without further incident and the unit and facility returned to normal operations

90.  At approximately 1:30 pm, Mr. Stabnow was at his recreation time when Ms. Benson showed up and gave Mr. Stabnow the Police report that he had been asking for help filing.

91.  Mr. Stabnow was also given a Behavioral Expectation Report ("BER") for his *Unauthorized Area Behavior* described above.

92.  On January 22, 2015, Mr. Stabnow initiated an *informal Grievance* on MSOP's policy and procedure for reporting crimes to the proper authorities by writing a request to Defendant Kevin Moser which discussed MSOP's inadequate Policies for reporting crimes and how Mr. Stabnow had to resort to threatening the security of the

facility to get assistance to report a crime. Mr. Stabnow was told to follow the Grievance Policy.

93.    On January 26, 2015 Mr. Stabnow filed a Formal Grievance with the requested outcome as follows: "that a policy be made to handle the reporting of crimes that do take place within the MSOP program."

94.    Mr. Stabnow was seeking to create a way for the MSOP to assist patients in reporting crimes that are perpetrated against them by persons outside of the MSOP; meaning that these crimes are not committed by staff or other clients, thus removing OSI from the picture; as their jurisdiction falls within crimes that are internal matters per MSOP Policy.

95.    On January 27, 2015 Mr. Stabnows grievance was logged and forwarded to Ken Stewart, Office of Special Investigations Assistant Director, by Kris Huso, the Grievance Coordinator.

96.    On January 27, 2015, Mr. Stewart received Mr. Stabnow's grievance for his review.

97.    On February 3, 2015, Mr. Stewart dismissed Mr. Stabnows' grievance and forwarded it to the Grievance Coordinator Kris Huso to be logged and sent back to Mr. Stabnow.

98.    On February 3, 2015 Defendant Kris Huso logged and returned the *Formal Grievance* to Mr. Stabnow.

99.    On February 4, 2015, Mr. Stabnow received the dismissed *Formal Grievance* and filed an appeal to Defendant Kevin Moser.

100.   Mr. Stabnow reiterated the MSOP's need for a policy that helps patient's report crimes that are committed against them by persons not affiliated with the MSOP; that the current policy fails to address, so that clients are not denied justice, because a *Law Enforcement Agency* will not accept a complaint from an individual that is civilly committed to the MSOP.

101.   On February 5, 2015 Mr. Stabnow submitted a *Client Request* to Defendant Ralph Schmidt, Office of Special Investigations Director inquiring why members of OSI are operating outside of their scope as outlined in MSOP policy.

102.   On February 6, 2015 Mr. Stabnow's *Formal Grievance Appeal* was logged and forwarded to Mr. Schmidt for review by the Grievance Coordinator Kris Huso.

103.   On February 13, 2015, Mr. Stabnow's *Formal Grievance Appeal* was affirmed by Mr. Schmidt and returned to the Grievance Coordinator to be logged and returned to Mr. Stabnow.

104.   Mr. Stabnow received his *Formal Grievance Appeal* and the affirmed response from Mr. Schmidt on or around the date of February 14, 2015 which said: "Mr. Stabnow, Thank you for your information regarding clarification in policy to provide steps a client can take to report crimes.  MSOP Policy # 107.005 does state a client has the ability to notify law enforcement on his/her own behalf.  We will review this language and work to develop further guidance on how this can be accomplished. The review will be focused on how the program can assist you and others in similar cases report crimes.  In addition our OSI staff did work with you on your case and as

I understand, the case was recently forwarded to the Moose Lake Police Department for their review.".

105.    On March 12, 2015, Mr. Stabnow got back his *Client Request* from Mr. Schmidt with the following response: "Mr. Stabnow, thank you for your request. I apologize for not getting back sooner as I was out of the office for a while. I hope my last letter to you helps explain your question above. If not please let me know. Thank you, Ralph Schmidt."

106.    On December 11, 2015, Mr. Stabnow became aware of three (3) new policies that went into effect on April 7, 2015 that did not provide any new provision for assisting clients with the filing of criminal complaints that have no direct relation to the MSOP, its staff, or other clients. Mr. Stabnow submitted a *Client Request* to Mr. Schmidt seeking an answer why this language was not included in the new policies that govern OSI.

107.    On December 17, 2015, Mr. Stabnow received a response to his inquiry and was disappointed to learn that the MSOP once again disregarded his concerns and refused to correct a problem within their policy and procedure.

108.    Mr. Stabnow has been and continues to be injured by the acts and omissions of Defendants. As long as the defendants fail to remedy their policies to reflect procedures that assist patients in the future; who may find themselves in the same or similar position as Mr. Stabnow. Mr. Stabnow will continue to be under threat of harm in an environment that is detrimental to his mental and emotional well-being.

# IX    CLAIMS

### Count I
### Denial of Right to Equal Protection of the Law and Substantive Due Process in violation of the Fourteenth Amendment of the United States Constitution and Article 1 section 5 of the Minnesota Constitution.

109.    The Fourteenth Amendment guarantees that: "[n]o State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

110.    The defendants refused to assist Mr. Stabnow in working with the police department to report the crime of *Identity Theft* that was perpetrated against Mr. Stabnow by someone outside of the MSOP.

111.    Such failure to act, restricted and violated Mr. Stabnow's right to Equal Protection of the Law and Substantive Due Process.  By not assisting Mr. Stabnow, the defendants failed to provide him with Equal Protection of the Law that the Fourteenth Amendment guarantees.

112.    The acts and omission of Defendants constitute deprivation of Mr. Stabnows constitutional right to be equally protected by the law, which is a violation of his rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article 1, Section 5 of the Minnesota Constitution.

113.    Mr. Stabnow Stabnow has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.  Unless relief is granted, Mr. Stabnow will continue to

be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## Count II
**Denial of Right to be Free from Inhumane Treatment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution.**

114.    Mr. Stabnow incorporates all previous allegations as if fully set forth herein. The Fourteenth Amendment guarantees that "[n]o State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 Civilly committed persons may be subjected to liberty restrictions reasonably related to legitimate government objectives and that are not tantamount to punishment as determined by reasonable professional judgment. Confinement that denies a person the afforded protection of the law results in Inhumane treatment and based on the policy and procedures created and implemented by Defendants, they subject Mr. Stabnow to inhumane treatment through the punitive and unnecessarily restrictive living conditions at the MSOP. Mr. Stabnow is subject to arbitrary discipline and decision-making by MSOP staff when he acts out of desperation that forces the MSOP to protect him from further harm by a person or Persons who stole his Identity. The acts and omission of Defendants constitute deprivation of Mr. Stabnows constitutional right to be free from inhumane treatment in violation of his rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article 1, Section 5 of the Minnesota Constitution. Mr. Stabnow has been

subject to and injured by these violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above. Unless relief is granted, Mr. Stabnow will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count III
### Denial of Right to be Free from Punishment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution.

115.    Mr. Stabnow incorporates all previous allegations as if fully set forth herein. The Fourteenth Amendment guarantees that "[n]o State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Defendants treated Mr. Stabnow as if he was responsible for the action that was perpetrated against him and insisted that he examine his Thinking Errors ( a term that is used within the Treatment Program that Mr. Stabnow is participating in) at being victimized by another person. The defendants apparent lack of concern and empathy for Mr. Stabnow's plight and their complete refusal to assist him until he acted in a manner that was a violation of the rules of the MSOP in an attempt to try to protect himself against further injury; and punishing him as a result, is a violation of the Fourteenth Amendment. By not providing Mr. Stabnow with the protection of the law, the defendants created the situation in which Mr. Stabnow was forced to act out of self- conservation. Mr. Stabnow asserts that if the MSOP and its Staff had helped

to report the crime committed, as Mandated Reporters, that his actions would not have been warranted and he would not have violated the rules of the MSOP. The acts and omission of Defendants constitute deprivation of Mr. Stabnows constitutional right to be free from punishment in violation of his rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article 1, Section 5 of the Minnesota Constitution. Mr. Stabnow has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above. Unless relief is granted, Mr. Stabnow will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## X    PRAYER FOR RELIEF

WHEREFORE, Robert Lee Stabnow prays for relief including but not limited to the following:

a.    That the unlawful conduct alleged herein be declared to be illegal and in violation of the federal and state constitutions, statutory and common law claims alleged herein;

b.    That the Court order Defendants to remedy their policies and procedures to prevent further harm that is outlined above;

c.    That Defendants be enjoined from engaging in the same or similar practices alleged herein;

d.    That Mr. Stabnow recovers actual and nominal damages, as provided by law, determined to have been sustained as to each of them, and that judgment be entered against each Defendant on behalf of Mr. Stabnow;

e.    That Mr. Stabnow receive pre-judgment and post-judgment interest as allowed by law;

f.    That Mr. Stabnow recovers the costs of the suit, attorneys' fees and expenses as allowed by law; and

g.    All other relief allowed by law and equity including but not limited to any relief awarded.

## XI    DEMAND FOR JURY TRIAL

116.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Stabnow demands a trial by jury on all issues so triable.

Dated August 1, 2016

Robert Lee Stabnow
Pro Se