UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Lee Stabnow,

                    Plaintiff,                    Court File No. 16-cv-2648 (DWF/LIB)

    v.

                                                  **REPORT AND RECOMMENDATION**

Emily Johnson Piper, et al.


                    Defendants.


    This matter comes before the undersigned United States Magistrate Judge pursuant to a referral made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motion to Dismiss, [Docket No. 11]. Briefing was completed on February 24, 2017, and the motion was taken under advisement thereafter.

    For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 11], be **GRANTED**.

## I.    BACKGROUND  AND STATEMENT OF ALLEGED FACTS[1]

    Robert Lee Stabnow ("Plaintiff") is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (First Amended Compl., [Docket No. 19], 14). At some point in late 2014, Plaintiff learned that he had been the victim of identity theft involving accounts he maintained at a bank outside the MSOP. (Id. at 14-15). Plaintiff reported the identity theft to Meg. M. McCauley, the Client Rights Coordinator at Moose Lake; on December 2, 2014, McCauley

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the the First Amended Complaint (filed in the present case as a Response to Defendants' Motion to Dismiss, see, [Docket No. 19]) as true and construes them in the light most favorable to Plaintiffs. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

wrote an incident report about the identity theft; and she directed Plaintiff to submit a request to Ken Stewart, the Assistant Director of the MSOP's Office of Special Investigations ("OSI"). (Id. at 9, 12, 15). Stewart responded to Plaintiff's submission asking Plaintiff to retain all documents that related to the identity theft, and he informed Plaintiff that an investigator would meet with Plaintiff. (Id. at 15).

On December 16, 2014, Plaintiff spoke with OSI Investigators Thane D. Murphy and Rebecca L. Benson, who recorded his statement and made photocopies of the evidence of identity theft that he possessed. (Id. at 11-12, 16). They recommended that Plaintiff consider not pursuing the issue further, as they believed any crime committed was a misdemeanor at best and the bank had already refunded Plaintiff's money. (Id. at 16). Murphy also informed Plaintiff that he could file a report with the Moose Lake Police Department ("MLPD") by telephone. (Id.). Accordingly, Plaintiff called the MLPD the same day, but he was told that he should call back in 2 weeks after the MLPD had reviewed the evidence from Investigators Murphy and Benson. (Id.).

During a subsequent core group therapy session, Plaintiff discussed his frustration over the identity theft and his attempts to report it. (Id. at 16). Jenna R. Younker, the Clinician at Moose Lake who was facilitating the group, asked Plaintiff to identify his "thinking errors" in the situation. (Id. at 10, 16). Plaintiff believes that Younker's question implied he was both at fault for the identity theft and wrong to be upset about it. (Id. at 17).

Plaintiff called the MLPD again on the morning of December 30, 2014, and was instructed that he should work with OSI to file a police report, as the MLPD would only accept reports forwarded from OSI. (Id.). Benson, Murphy, and Jesse J. Cornish, another OSI Investigator, later wrote Incident Reports about Plaintiff's phone call to the MLPD. (Id. at 11,

17). Plaintiff went to the staff desk to ask Mark A. Hansen, a Lead Security Counselor at Moose Lake, to contact OSI so that Plaintiff could file a report with the MLPD. (Id. at 10, 17). Hansen instructed Plaintiff that to speak with OSI he should submit a Client Request, and Plaintiff asked why no one would help him report the identity theft to the MLPD. (Id. at 17). Hansen quoted MSOP policy to Plaintiff and told Plaintiff that he could contact the MLPD himself; when Plaintiff said that the MLPD had already told him to go through OSI, Hansen again stated that Plaintiff needed to submit a Client Request in order to speak with OSI. (Id. at 18).

While Hansen and Plaintiff were talking, Security Counselor Will A. Robinson came to the desk, but he did not join the conversation; Hansen repeatedly told Plaintiff that to speak with OSI, he would have to submit a Client Request. (Id. at 11, 18). Believing that the staff members were not taking him seriously enough, Plaintiff decided he was going to "give [staff] a reason to call [OSI]"; so Plaintiff walked toward an area behind the desk where he is not authorized to be. (Id. at 18). When Hansen initiated the Incident Command System, Plaintiff retreated from the area. (Id.).

Thomas L. Cherro, Mathew R. Brown, and Nicole L. Kielty, the Security Counselors who comprise the Crisis Management Team, arrived and repeatedly asked Plaintiff to sit at a nearby table. (Id. at 11, 19). Plaintiff refused to sit at the table until he knew OSI would help him file a police report, but he moved away from the staff desk when directly ordered to do so. (Id. at 19). Unit Director Sara Kulas also responded too, and she told Plaintiff that, if he submitted a Client Request, he would receive the assistance he wanted. (Id. at 10, 19). Plaintiff was not receptive to the suggestion, and he stated that he would "'keep this unit on lockdown for as long as is needed to file a police report.'" (Id. at 19).

3

McCauley arrived and informed Plaintiff that she would call the MLPD to file a police report for Plaintiff. (Id. at 20). McCauley also stated that Benson would retrieve a copy of the police report from MLPD for Plaintiff's records later in the day. (Id.). Thereafter, Plaintiff returned to his cell, and Benson later brought Plaintiff a copy of the police report. (Id.). Plaintiff also received a Behavioral Expectation Report ("BER") for his earlier actions in the staff desk area. (Id.).

On January 22, 2015, Plaintiff initiated an informal grievance by writing a request to Kevin Moser, the Facility Director at Moose Lake, regarding the MSOP's policy and procedure on reporting crimes to outside authorities. (Id. at 8, 20). Plaintiff was told to follow the Grievance Policy, and on January 26, 2015, Plaintiff filed a Formal Grievance asking "that a policy be made to handle the reporting of crimes that do take place within the MSOP program." (Id. at 20-21). The following day, Kris Huso, the Grievance Coordinator and Moser's secretary, logged the Formal Grievance and forwarded it to Stewart. (Id. at 12, 21).

On February 3, 2015, Stewart dismissed the Formal Grievance and returned it to Huso, who then returned it to Plaintiff. (Id. at 21). When Plaintiff received the dismissed Formal Grievance, he filed an appeal with Moser. (Id.). Plaintiff also submitted a Client Request to Ralph Schmidt, Director of the OSI, asking for justification of actions of OSI Investigators whom Plaintiff believed were acting outside the scope of their duties. (Id. at 8-9, 22). Huso forwarded Plaintiff's appeal of the dismissal of his Formal Grievance to Schmidt as well; Schmidt responded in writing to Plaintiff on or around February 14, 2015, stating:

> Thank you for your information regarding clarification in policy to provide steps a client can take to report crimes. MSOP Policy # 107.005 does state a client has the ability to notify law enforcement on his/her own behalf. We will review this language and work to develop further guidance on how this can be accomplished. The review will be focused on how the program can assist you and others in similar cases report crimes. In addition, our OSI staff did work with you on your

4

case and as I understand, the case was recently forwarded to the [MLPD] for their review.

(Id. at 22). On March 12, 2015, Plaintiff received a response from Schmidt regarding Plaintiff's Client Request; Schmidt apologized for the delay in responding; and Schmidt stated that if Plaintiff had additional questions, he should inform Schmidt. (Id. at 22-23).

On April 7, 2015, certain new MSOP policies went into effect. (Id. at 23). Plaintiff learned of the new policies in December 2015. (Id.) Believing that these new policies did not properly address his concerns, Plaintiff submitted another Client Request to Schmidt, asking why the policies did not include language addressing Plaintiff's concerns. (Id.). Schmidt responded to the inquiry, but Plaintiff was again not satisfied by the reply.[2] (Id.).

Based on the foregoing events, Plaintiff filed a Complaint with this Court on August 15, 2016. ([Docket No. 1]). Plaintiffs named as Defendants:  Emily Johnson Piper, the Commissioner of the Minnesota Department of Human Services ("DHS"); Nancy A. Johnston, the former Executive Director of the MSOP; Shelby Richardson, the Executive Director and former Executive Clinical Director of the MSOP; Kevin Moser; Terry Kneisel, the Assistant Facility Director at Moose Lake; Scott Benoit, a Program Manager at Moose Lake; Steve Sadjak, a Program Manager at Moose Lake; Schmidt; Ken Stewart; Julianna L. Beavens, an Officer of the Day at Moose Lake; Ronald Fischer, an Officer of the Day at Moose Lake; Sara Kulas; Dana Osborne, Clinical Supervisor at Moose Lake; Jenna Younker; Mark Hansen; Will Robinson; Matthew Brown; Thomas Cherro; Nicole Kielty; Thane Murphy; Rebecca Benson; Meg McCauley; Kris Huso; the MSOP; and the Minnesota DHS (collectively, "Defendants").[3] (Id. at

---

[2] Plaintiff does not articulate the contents of this response, stating only that Plaintiff "was disappointed to learn that the MSOP once again disregarded his concerns and refused to correct a problem with their policy and procedure." (First Amend. Compl., [Docket No. 19], 23).

[3] Plaintiff did not name Jesse Cornish (an OSI Investigator) or Jannine Hébert (the Executive Clinical Director of the MSOP) as Defendants until he filed his First Amended Complaint in response to Defendants' Motion to Dismiss.

6-11). Plaintiff sought to bring claims against the named Defendants in both their individual and official capacities. (Id. at 2; First Amend. Compl., [Docket No. 19], 1).

In Count I, Plaintiff alleges that Defendants' refusal to assist him in reporting the identify theft to the MLPD violated his federal rights under the Due Process and the Equal Protection Clauses of the Fourteenth Amendment and his rights under the Minnesota Constitution. (Compl., [Docket No. 1], 22). In Count II, Plaintiff appears to allege that his receipt of a BER for his actions at the staff desk on December 30, 2014, subjected him to inhumane treatment, which he contends is also in violation of both the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution. (Id. at 23-24). In Count III, Plaintiff similarly alleges that his treatment in his therapy core group session when he expressed frustration over being the victim of identity theft and his receipt of a BER for his actions on December 30, 2014, was unwarranted punishment also in violation of the U.S. Constitution's Fourteenth Amendment and the Minnesota Constitution.[4] (Id. at 24-25). Plaintiff seeks declaratory judgment, injunctive relief, actual and/or nominal damages, and the costs and fees involved in bringing this suit. (Id. at 25).

After this Court granted Plaintiff's Application for Leave to Proceed in Forma Pauperis, Defendants filed the present Motion to Dismiss. (See, Order, [Docket No. 4]; Motion, [Docket No. 11]). In their Memorandum in Support, Defendants argue that this Court should dismiss Plaintiff's Complaint for lack of federal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Mem. in Supp., [Docket No. 13]). On January 30, 2017, Plaintiff filed a "Notice of First Amended Complaint in Response to Defendants['] Motion to Dismiss" and a First

---

[4] Although Plaintiff asserts within the body of the Complaint and the First Amended Complaint that certain Defendants failed in their duties as mandatory reporters under Minn. Stat. 626.557, subd. 7, and 42 U.S.C. § 1985(2-3), (First Amend. Compl., [Docket No. 19], 5), he does not bring a claim based upon this alleged failure. (Id. at 24-28).

Amended Complaint. (Docket Nos. 18-19]). In comparison to the original Complaint, the First Amended Complaint (1) alleges a few additional facts; (2) removes the MSOP and Minnesota DHS as Defendants[5]; (3) adds as Defendants Jesse Cornish and Jannine Hébert, the Executive Clinical Director of the MSOP; and (4) adds a claim (Count IV) alleging that Defendants illegally attempted to persuade Plaintiff not to pursue reporting the theft of his identity, thereby denying him his right to seek restitution under 42 U.S.C. § 10607 as the victim of a crime. ([Docket No. 19]).

On February 6, 2017, this Court issued an Order informing the parties that the Court would construe Plaintiff's First Amended Complaint as his response to the pending Motion to Dismiss because Plaintiff had filed a First Amended Complaint but not a memorandum of law in opposition to the pending Motion to Dismiss. (Order, [Docket No. 21], 1-2). Thus, the Court ordered Defendants to address within their Reply Memorandum any effect the First Amended Complaint has on the pending Motion to Dismiss. (Id. at 2). Defendants filed their Reply on February 17, 2017. (Reply, [Docket No. 26]). On February 24, 2017, this Court took the Motion to Dismiss under advisement on the parties' written submissions. (See, Order, [Docket No. 21]).

## II.    DEFENDANTS' MOTION TO DISMISS [Docket No. 11]

### A.  Standards of Review

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a pleading for lack of subject matter jurisdiction by challenging the sufficiency of the pleading on its face or the factual truthfulness of its allegations. See, Branson Label, Inc. v. City of Branson,

---

[5] Accordingly, the Court construes the removal of the MSOP and the Minnesota DHS by Plaintiff as voluntary dismissals pursuant to Federal Rule of Civil Procedure 41. The MSOP and the Minnesota DHS should therefore be dismissed from this action pursuant to paragraph IV(1), infra, p. 22.

793 F.3d 910, 914-15 (8th Cir. 2015). When, as here, the moving party raises facial challenges, "'the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction.' Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" See, Id. at 914 (quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990), and Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

When considering a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims

8

against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. <u>See</u>, <u>Iqbal</u>, 556 U.S. at 678-81.

42 U.S.C. § 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. "To recover under § 1983, a plaintiff must prove '(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." <u>McDonald v. City of St. Paul</u>, 679 F.3d 698, 704 (8th Cir. 2012).

### B. Analysis

This Report and Recommendation addresses the arguments by Defendants largely in the order in which Defendants raised those arguments in their Memorandum in Support of their Motion to Dismiss, [Docket No. 13], and their Reply in Support of their Motion to Dismiss, [Docket No. 26].

### 1. Eleventh Amendment Immunity

Plaintiff has maintained in his First Amended Complaint his claims against Defendants in their official capacities which seek monetary damages. ([Docket No. 19], 24-29). Defendants assert in their Motion to Dismiss that the Eleventh Amendment bars <u>all</u> of Plaintiff's claims against them in their official capacities which seek monetary damages. (Mem. in Supp., [Docket No. 13], 7-8).

It is well-established that the Eleventh Amendment prohibits lawsuits against a state or its agency, regardless of the relief sought, unless the state has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. <u>See</u>, <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978); <u>Enyeart v. Minnesota</u>, 408 F. Supp. 2d 797, 802 (D.

Minn. 2006). In the present case, there is no allegation that Minnesota has either consented to suit or that Congress has abrogated Minnesota's immunity for the putative federal causes of action asserted herein. In addition, "[a] state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" Hadley v. N. Ark. Cmty. Tech. Coll., 76 F.3d 1437, 1438 (8th Cir. 1996). Therefore, the Eleventh Amendment bars Plaintiff from recovering monetary damages from Defendants in their official capacities. See, Hafer v. Melo, 502 U.S. 21, 25 (1991) (citations and quotations omitted) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").[6]

Therefore, the Eleventh Amendment will preclude the recovery of monetary relief from any of the Defendants for any of his claims alleged against them in their official capacities. Accordingly, this Court recommends **dismissing with prejudice** all of Plaintiff's official-capacity claims against Defendants which seek to recover monetary damages.

### 2. Individual-Capacity Claims

In their initial Memorandum in Support of their Motion to Dismiss, Defendants argue that Plaintiff had asserted claims against Defendants only in their official capacities because Plaintiff had failed to explicitly assert claims against Defendants in their individual capacities. (Mem. in Supp., [Docket No. 13], 6-7). In response, in his First Amended Complaint, Plaintiff added language stating that he is bringing the claims against "Defendants in both their individual and official capacities." (First Amend. Compl., [Docket No. 19], 1). Nonetheless, Defendants also contend that Plaintiff's individual-capacity claims against certain named Defendants must still be dismissed because Plaintiff has failed to sufficiently allege that each of these Defendants were

---

[6] The government and its officials are similarly immune from punitive damages under § 1983 because "considerations of history and policy do not support exposing a [state] to punitive damages for the bad-faith actions of its officials." See, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

personally involved in or personally responsible for an allegedly unconstitutional act. (Mem. in Supp., [Docket No. 13], 8; Reply, [Docket No. 26], 3-5).

Plaintiff's § 1983 claims allege that Defendants improperly denied or infringed upon Plaintiff's constitutional rights to equal protection, due process, and freedom of expression. (Compl., [Docket No. 1], 10-12).

> To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's [federal] constitutional rights. While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his "failure to properly supervise and train the offending employee" caused the constitutional violation at issue. Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions." In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, we assess each defendant relative to his authority over the claimed constitutional violation.

Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citations omitted).

To survive Defendants' current Motion to Dismiss, Plaintiff in the present case must have alleged each individually named Defendant's personal involvement in the asserted violations with "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See, Twombly, 550 U.S. at 555.

First, Plaintiff identifies Defendants Julianna Beavens and Ronald Fischer as Officers of the Day at Moose Lake who are responsible for signing off on BERs; Plaintiff also identifies Defendant Dana Osborne as a Clinical Supervisor at Moose Lake. (Response, [Docket No. 19], 9-10). Plaintiff generally alleges that Defendants Beavens and Fischer were "aware of the deficiencies within the Policies and Procedures and fail[ed] to help in remedying those problems," and that Defendant Osborne was "aware of the deficiencies that exist in Administrative Policy & Procedure and she failed to contact OSI when she became aware that

Mr. Stabnow's safety and security was in jeopardy and acted outside her scope of duties by failing to protect Mr. Stabnow from further injury." (Id.). However, Plaintiff does not allege or identify any specific involvement by Defendants Beavens, Fischer, or Osborne in the events underlying the case presently before this Court. (First Amend. Compl., [Docket No. 19], 1, ). Even construing the pro se First Amended Complaint liberally and drawing all reasonable inferences in Plaintiff's favor, there are simply no factual allegations of personal involvement contained in the First Amended Complaint regarding Defendants Beavens, Fischer, or Osborne that could "raise a right to relief above the speculative level." See, Twombly, 550 U.S. at 555.

Similarly, Plaintiff identifies Defendants Emily Piper, Nancy Johnston, Jannine Hébert, Shelby Richardson, Kevin Moser, Terry Kneisel, and Scott Benoit (collectively, "Administrative Defendants"), as "administrative personnel who oversee the implementation and write all of the Policies and Procedures that govern the operation of the MSOP." (First Amend. Compl., [Docket No. 19], 6-8).

The only allegations in the First Amended Complaint that specifically refer to the Administrative Defendants are general assertions about each Administrative Defendant's areas of responsibility, that they "support the use of" the policy under which Plaintiff alleges his constitutional rights were violated, and that they "failed to implement a proper remedy and/or amend relevant MSOP Policy, to deter the injury complained of herein from repeating itself in the future." (First Amend. Compl., [Docket No. 19], 4, 6-8). In addition, Count II of the First Amended Complaint is the only count that specifically names the Administrative Defendants, and it is based upon an allegation that the Administrative Defendants (and other Defendants) "created, implemented and enforced" policies and procedures that result in "[c]onfinement that denies a person the afforded protection of the law [and] results in Inhumane treatment." (Id. at

25). These general and conclusory statements are not sufficient to meet the § 1983 requirement that Plaintiff allege the Administrative Defendants' personal involvement in an alleged violation of Plaintiff's federal statutory or constitutional rights. The First Amended Complaint therefore contains no specific assertions as to any individual actions by any of the named Administrative Defendants. Accordingly, there are no factual allegations against any of the Administrative Defendants that could raise a right to relief beyond the speculative level.

Next, the Court turns to those few Defendants regarding whom Plaintiff has made at least some specific factual allegations. The only factual allegation regarding Defendant Steve Sadjak is that he "spoke to Mr. Stabnow directly about the theft of his identity." (Response, [Docket No. 19], 8). As to Defendant Jesse Cornish, the only factual allegation is that he filled out an Incident Report that noted Plaintiff's telephone call of the MLPD on December 30, 2014. (Id. at 17). Regarding Defendant Kris Huso, the only factual allegation Plaintiff makes is that Defendant Huso was involved in logging and facilitating movement of Plaintiff's grievances within the administrative system of the MSOP. (Id. at 21-22). None of the foregoing statements are sufficient to meet the § 1983 requirement that Plaintiff allege the personal involvement of Defendants Sadjak, Cornish, and Huso in the purported violations of Plaintiff's federal statutory or constitutional rights.

Similarly, as to Defendants Sara Kulas and Meg McCauley, Plaintiff has alleged only that they attempted to assist him in filing a police report. Defendant McCauley filed an Incident Report on December 2, 2014, after learning of the identity theft, and directed Plaintiff to speak with Ken Stewart. (First Amend. Compl., [Docket No. 19], 15). During the incident in the staff desk area on December 30, 2014, Defendant Kulas "told [Plaintiff] that if he wanted to submit a Client Request, he would get the assistance he was seeking," and Defendant McCauley arranged

for Defendant Rebecca Benson to call the MLPD, file a police report, and retrieve a copy of that for Plaintiff's records. (Id. at 19-20).

Likewise, Defendant Will Robinson was present for Plaintiff's conversation with Defendant Mark Hansen on December 30, 2014, but Robinson did not join the conversation; Defendants Nicole Kielty, Matthew Brown, and Thomas Cherro are identified as members of the Crisis Management Team who responded to the staff desk area on December 30, 2014, and Defendant Cherro simply ordered Defendant to leave the area of the staff desk. (Id. at 18-19).

Plaintiff makes no further allegations of any personal involvement in the events underlying the case presently before the Court other than to generally assert that Defendants Robinson, Kielty, Brown, and Cherro "failed to contact OSI when [they] became aware that Mr. Stabnow's safety and security was in jeopardy and acted outside [their] scope of duties by failing to protect Mr. Stabnow from further injury." (Id. at 11).

Even construing the pro se First Amended Complaint liberally, the aforementioned statements are not sufficient to meet the § 1983 requirement that Plaintiff allege the personal involvement of Defendants Kulas, McCauley, Robinson, Kielty, Brown, and Cherro in the alleged violations of Plaintiff's federal statutory or constitutional rights.

As set forth above, even construing the pro se First Amended Complaint liberally and drawing all reasonable inferences in Plaintiff's favor, the factual allegations contained therein regarding the Administrative Defendants (Piper, Johnston, Richardson, Moser, Kneisel, Hébert, and Benoit) and Defendants Beavens, Fischer, Osborne, Sadjak, Cornish, Huso, Kulas, McCauley, Robinson, Kielty, Brown, and Cherro do not "raise a right to relief above the speculative level." See, Twombly, 550 U.S. at 555. This failure is fatal to Plaintiff's individual-capacity § 1983 claims against these Defendants, regardless of whether Plaintiff seeks monetary

or injunctive relief, as Plaintiff may not obtain either type of relief on a claim that has been so inadequately pled that it cannot survive a Rule 12(b)(6) Motion to Dismiss.

Accordingly, this Court recommends **dismissing without prejudice** Plaintiff's individual-capacity § 1983 claims against Defendants Piper, Richardson, Johnston, Hébert, Moser, Kneisel, Sadjak, Benoit, Beavens, Fischer, Kulas, Osborne, Robinson, Brown, Cherro, Kielty, Cornish, McCauley, and Huso.

### 3. <u>Alleged Constitutional Violations and Statutory Violations</u>

Defendants do not argue that there are insufficient allegations in the First Amended Complaint of individual involvement on behalf of the remaining Defendants: Defendants Schmidt, Stewart, Younker, Hansen, Murphy, or Benson. (Reply, [Docket No. 26], 3-5). Nevertheless, even if it is assumed that the First Amended Complaint did sufficiently plead each of these Defendant's personal and individualized involvement, Plaintiff has alternatively failed to sufficiently allege underlying violations of any federal constitutional rights under the Fourteenth Amendment.[7] This failure requires dismissal of Plaintiff's § 1983 claims against <u>all</u> Defendants, whether named in their official or individual capacities and whether injunctive relief or monetary damages are sought, as Plaintiff may not obtain relief on a § 1983 claim based on a violation of his constitutional or federal statutory rights without first adequately pleading a violation of those rights. <u>See</u>, 42 U.S.C. § 1983 (creating liability of a person who, under color of law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws");

---

[7] The First Amended Complaint filed in response to Defendants' Motion to Dismiss did not greatly change Counts I through III of the original Complaint, other than identifying the specific Defendants against whom Plaintiff brings each claim and adding brief additional factual grounds for each claim. (<u>Compare</u> Compl., [Docket No. 1], 22-25, <u>with</u> First Amend. Compl., [Docket No. 19], 24-28). However, because this Court must liberally construe Plaintiff's pro se pleadings and is construing the First Amended Complaint as a Response to the Motion to Dismiss, the Court considers all allegations and grounds asserted in the First Amended Complaint in its analysis of whether Plaintiff has sufficiently alleged violations of his Constitutional Rights such as could sustain the claims he brings in the present case.

Bowden v. Meinberg, 807 F.3d 877, 881 (8th Cir. 2015) ("A plaintiff seeking damages under 42

U.S.C. § 1983 must show first that the defendant's conduct violated a constitutional right . . . .").

### a. **Count I**

In Count I, Plaintiff asserts that Defendants Younker and Hansen[8]:

> 115.  . . . refused to assist Mr. Stabnow in working with the police department to report the crime of Identity Theft that was perpetrated against Mr. Stabnow by someone outside of the MSOP and insisted that Mr. Stabnow work with OSI to file a police report.
> 116.  Such failure to act, restricted and violated Mr. Stabnow's right to Equal Protection of the Law and Substantive Due Process Rights. By not assisting Mr. Stabnow, the Defendants failed to provide him with Equal Protection of the Law that the Fourteenth Amendment guarantees.
> 117.  The acts and omission of Defendants constitute a deprivation of Mr. Stabnows' [*sic*] constitutional right to be equally protected by the law, which is a violation of his rights guaranteed under the Fourteenth Amendment to the United States Constitution . . . .

(First Amend. Compl., [Docket No. 19], 24). By the foregoing language, Plaintiff bases Count I

of his Complaint on alleged violations of the Fourteenth Amendment's Substantive Due Process

and Equal Protection Clauses.

> [T]o prevail on an as-applied due process claim, that the state defendants' actions violated the plaintiffs' substantive due process rights, the plaintiffs "must demonstrate *both* that the [state defendants'] conduct was conscience-shocking, *and* that the [state defendants] violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" . . . .
> . . . To determine if the actions were conscience-shocking, the district court should consider whether the state defendants' actions were "egregious or outrageous." To meet this high standard, we have explained that the alleged substantive due process violations must involve conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism

---

[8] Plaintiff limits Count I to allege a violation only by Defendants Kulas, Osborne, Younker, Hansen, Robinson, Brown, Cherro, Kielty, and McCauley. (See, First Amended Complaint, [Docket No. 19], 24). However, since this Court recommends dismissing Plaintiff's individual-capacity claims against Defendants Kulas, Osborne, Robinson, Brown, Cherro, Kielty, and McCauley because of Plaintiff's failure to sufficiently allege these Defendants' personal involvement in the alleged violations of Plaintiffs' federal statutory or constitutional rights, Plaintiff's inclusion of these Defendants in Count I is not otherwise noted herein.

rather than a merely careless or unwise excess of zeal that it amounted to a brutal
and inhumane abuse of official power literally shocking to the conscience."

Karsjens v. Piper, No. 15-cv-3485, 2017 WL 24613, *9 (8th Cir. Jan. 3, 2017) (citations
omitted).

Defendants argue that Plaintiff has failed to allege facts to sufficiently plead a substantive
due process claim because he has not alleged conscience-shocking behavior or the violation of a
fundamental right. (Mem. in Supp., [Docket No. 13], 14; Reply, [Docket No. 26], 5]). In his First
Amended Complaint, Plaintiff did not allege any specific facts that would allege the violation of
a fundamental right or support a finding of conscience-shocking behavior, as is required to
succeed on a substantive due process claim. Plaintiff's allegations are essentially conclusory
labels without more.

"Only in the rare situation when the state action is 'truly egregious and extraordinary'
will a substantive due process claim arise." Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012)
(citation omitted). Requiring a civilly committed individual to comply with policies and
procedures that govern how to access the OSI and, therefore in this set of circumstances, how to
file a police report with the MLPD, do not constitute actions that shock the conscience under this
standard. Similarly, the responses to Plaintiff's Formal and Informal Grievances, as they are set
forth within the pleadings; the statement of MSOP staff during Plaintiff's core group therapy
session; and staff response to the incident with Plaintiff in the staff desk area on December 30,
2014, do not shock the conscience. Even reading the Complaint as a whole; construing it
liberally; taking all the facts pled within as true; and drawing all reasonable inferences in
Plaintiff's favor, Plaintiff has failed to make any sufficient factual allegations to support a
plausible claim for a violation of his substantive due process rights.

Similarly, in order to adequately plead his equal protection claim and survive a Rule 12(b)(6) motion, Plaintiff needed to plead that Defendants treated him differently than similarly situated persons. See, Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998). Plaintiff has not identified any set of similarly situated persons who have received different treatment under similar circumstances. As stated in Twombly, 550 U.S. at 555, factual allegations in the Complaint must consist of "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do."

Accordingly, this Court recommends **dismissing without prejudice** Count I for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### b.  Counts II and III

In Count II, Plaintiff alleges that all Defendants "subject[ed] Mr. Stabnow to inhumane treatment through the punitive and unnecessarily restricting living conditions at the MSOP." (First Amend. Compl., [Docket No. 19], 26). He further asserts:

> 121.   Mr. Stabnow is subject to arbitrary discipline and decision making by MSOP staff when he acts out of desperation that forces the MSOP to protect him from further harm by a person or persons who stole his Identity.
> 122.   The acts and omission of Defendants constitute deprivation of Mr. Stabnow[']s constitutional right to be free from inhumane treatment in violation of his rights guaranteed under the Fourteenth Amendment to the United States Constitution . . . ."

(First Amend. Compl., [Docket No. 19], 26).

In Count III, Plaintiff alleges that Defendants Younker, Murphy, and Benson[9]:

> 124. . . . treated Mr. Stabnow as if he were responsible for the action that was perpetrated against him and insisted that he examine his Thinking Errors (a term that is used within the Treatment Program that Mr. Stabnow is participating

---

[9] Plaintiff limits Count III to allege a violation only by Defendants Younker, Cornish, Murphy, and Benson. (See, First Amended Complaint, [Docket No. 19], 27). However, since this Court recommends dismissing Plaintiff's individual-capacity claims against Defendant Cornish because of Plaintiff's failure to sufficiently allege his personal involvement in the alleged violations of Plaintiffs' federal statutory or constitutional rights, Plaintiff's inclusion of Defendant Cornish in Count I is not otherwise noted herein.

in) at being victimized by another person, and insisting that Mr. Stabnow not pursue charges since Mr. Stabnow was refunded his money.

125.  The Defendants['] apparent lack of concern and empathy for Mr. Stabnow's plight and their complete refusal to assist him until he acted in a manner that was a violation of the rules of the MSOP in an attempt to try to protect himself against further injury; and punishing him as a result, is a violation of the Fourteenth Amendment. By not providing Mr. Stabnow with the protection of the law, the Defendants created the situation in which Mr. Stabnow was forced to act out of self-conservation.

(First Amend. Compl., [Docket No. 19], 27). Plaintiff concludes:  "The acts and omission of Defendants constitute deprivation of Mr. Stabnow['s] constitutional right to be free from punishment in violation of his rights guaranteed under the Fourteenth Amendment . . . ." (First Amend. Compl., [Docket No. 19], 27).

Allegations of violations of the Fourteenth Amendment's "rights to less restrictive alternative confinement and to be free from punishment and inhumane treatment" have likewise been recognized by the Minnesota Federal District Court in the past to be allegations of violations of rights under the Substantive Due Process Clause of the Fourteenth Amendment. See, Karsjens v. Jesson, 6 F. Supp. 3d 916, 927 (D. Minn. 2014). Count II and Count III of Plaintiff's First Amended Complaint at best might be construed as alleging that his conditions of confinement were too restrictive. Just as was discussed above with respect to Count I, however, none of the allegations in Counts II and III within First Amended Complaint constitute actions that violate any of Plaintiff's fundamental rights or are shocking to the conscience, nor do they allege inhumane treatment or unconstitutional punishment to support a claim of substantive due process violation.

Even reading the Complaint as a whole; construing it liberally; taking all the facts pled within as true; and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has again

failed to make any sufficient factual allegations to support a plausible claim for a violation of his substantive due process rights.

Accordingly, this Court recommends **dismissing without prejudice** Counts II and III for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### c. <u>Count IV</u>

In his First Amended Complaint, Plaintiff also asserts a fourth claim, alleging that Defendants Younker and Hansen[10] violated his rights under 42 U.S.C. § 10607. (First Amend. Compl., [Docket No. 19], 28).

Title 42 U.S.C. § 10607 identifies services to victims of crimes that must be provided at each stage of a criminal case by a responsible official of "each department and agency of the United States engaged in the detection, investigation, or prosecution of crime," including providing information about restitution or other relief available to victims of crime. 42 U.S.C. § 10607(a), (c)(1)(B). Plaintiff asserts that the Defendants named above "failed to properly assist [Plaintiff] to seek remedy of [his] victimization [and] attempted to have [Plaintiff] drop his pursuit of justice since the level of the crime was at best a misdemeanor level crime." (First Amend. Compl., [Docket No. 19], 28). Plaintiff also asserts:  "As is set for[th] in the federal and state statutes, restitution is assessable to the victim, which in this case happens to be [Plaintiff]." (<u>Id.</u>).

However, 42 U.S.C. § 10607(d) explicitly states:  "This section does <u>not</u> create a cause of action or defense in favor of any person arising out of the failure of a responsible person to

---

[10] Plaintiff limits Count IV to allege a violation only by Defendants Beavens, Fischer, Kulas, Osborne, Younker, Hansen, Robinson, Brown, Cherro, Kielty, Cornish, Murphy, Benson, McCauley, and Huso. (<u>See</u>, First Amended Complaint, [Docket No. 19], 28). However, since this Court recommends dismissing Plaintiff's individual-capacity claims against Defendants Beavens, Fischer, Kulas, Osborne, Robinson, Brown, Cherro, Kielty, Cornish, McCauley, and Huso because of Plaintiff's failure to sufficiently allege their personal involvement in the alleged violations of Plaintiffs' federal statutory or constitutional rights, Plaintiff's inclusion of these Defendants in Count IV is not otherwise noted herein.

provide information as required by subsection (b) or (c) of this statute." (Emphasis added). At least one other Court has persuasively observed that the plain language of this portion of the statute prohibits Plaintiff from bringing the claim he attempts to pursue through Count IV. See, Kelley v. Fed. Bureau of Investigation, 67 F. Supp. 3d 240, 274-75 (D. D.C. 2014) (finding such a claim precluded by the language of the statute).

Accordingly, this Court recommends **dismissing with prejudice** Count IV for failure to state as a matter of law a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 4.  Minnesota Constitution

Defendants argue that the claims Plaintiff alleges under the Minnesota Constitution must be dismissed as a matter of law because Defendants are immune from such claims under the Eleventh Amendment. (Mem. in Supp., [Docket No. 16], 7). In response, Plaintiff maintains his claims under the Minnesota Constitution in his First Amended Complaint. (First Amend. Compl., [Docket No. 19], 24-28).

Although Plaintiff invokes § 1983, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." Alexander v. Hedback, 718 F.3d 762, 765 (8th Cir. 2013) (citing Lind v. Midland Funding, LLC, 688 F.3d 402, 405 (8th Cir. 2012)). Section 1983 does not itself grant jurisdiction; it is a vehicle for claims of federal statutory and constitutional violations, not a cause of action in and of itself. See, Hagans v. Lavine, 415 U.S. 528, 534 (1974). "[A]s noted by the Eighth Circuit, 'a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983.'" Rollins v. City of Albert Lea, 79 F. Supp. 3d 946, 960 (D. Minn. 2014) (quoting Bagley

v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993)). Therefore, Plaintiff's attempts to bring a claim of violations of the Minnesota Constitution as part of this § 1983 action necessarily fail.

In addition, since this Court recommends the dismissal of all of Plaintiff's federal statutory and constitutional claims alleged under 42 U.S.C. § 1983, this Court alternatively recommends declining to exercise pendent jurisdiction over Plaintiff's Minnesota constitutional claims.[11] See, Barstad v. Murray Cty, 420 F.3d 880, 888 (2005) (stating that when all federal-law claims are eliminated prior to trial, the balance of the factors relevant to an exercise of pendent jurisdiction generally point toward declining to exercise jurisdiction over any remaining state-law claims).

Therefore, this Court recommends **dismissing with prejudice** Plaintiff's claims which are based on alleged violations of the Minnesota Constitution.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 11], be **GRANTED** as to all Defendants**;**

2.  Plaintiff's § 1983 claims for monetary damages against all Defendants in their official capacities be **DISMISSED with prejudice;**

---

[11] Such claims would be futile in any event because Minnesota provides no private causes of action based on violations of the Minnesota Constitution. See, Richards v. Dayton, No. 13-cv-3029 (JRT/JSM), 2015 WL 1522199, *34-35 (D. Minn. Jan. 30, 2015) (finding Plaintiff "failed to state a claim alleging a violation of the Minnesota Constitution because Minnesota courts have not recognized a private right of action to address violations of the Minnesota Constitution), report and recommendation adopted by 2015 WL 1522237, *5-6; Jihad v. Fabian, No. 09-cv-1604 (SRN/LIB), 2011 WL 1641885, *8 (D. Minn. Feb. 17, 2011); (dismissing claim under Article 1, § 16 of the Minnesota Constitution because "Minnesota has not enacted a statute that is equivalent to Section 1983, which provides a private cause of action for violations of the Federal Constitution"), report and recommendation adopted by 2011 WL 1641767, *3 (D. Minn. May 2, 2011); Riehm v. Engelking, No. 6-cv-293 (JRT/RLE), 2007 WL 37799, *8 (D. Minn. Jan. 4, 2007) (dismissing claims under Minnesota Constitution because "[u]nlike 42 U.S.C. § 1983, Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota constitution").

3.  Plaintiff's § 1983 claims for injunctive relief against all Defendants be **DISMISSED without prejudice;**

4.  Plaintiff's § 1983 claims which are based upon alleged violations of the Fourteenth Amendment's guarantees of substantive due process and equal protection be **DISMISSED without prejudice;**

5.  Plaintiff's claims which are based upon alleged violations of the Minnesota Constitution be **DISMISSED with prejudice;** and

6.  Plaintiff's claims in Count IV be **DISMISSED with prejudice.**

Dated: April 7, 2017                                        s/Leo I. Brisbois
                                                            The Honorable Leo I. Brisbois
                                                            United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.